IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

_____

CHARLES A. LEE, #105 432            *

    Plaintiff,                              *

    v.                                           *        2:05-CV-923-MEF
                                                          (WO)

DONAL CAMPBELL, *et al.*,              *

    Defendants.                           *

_____

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

This 42 U.S.C. § 1983 action, was filed on September 26, 2005 by Charles Lee ["Lee"], an inmate incarcerated at the St. Clair Correctional Facility in Springville, Alabama.[1] Lee contends that Defendants violated his Fourteenth Amendment right to due process by relying on false information to deny him parole. Lee further alleges that Defendants violated the *Ex Post Facto* Clause by applying statutes and regulations to his request for parole which were not in existence at the time of his convictions. Finally, Lee asserts that Defendants violated his right to due process by denying his request for parole

---

[1] Although the Clerk of this court stamped the complaint "filed" on September 28, 2005, it is clear that Lee presented the complaint to prison officials for mailing prior to this date. A review of the pleadings indicates that Lee executed the complaint on September 26, 2005. (*Doc. No. 1 at 3*.) The law is well settled that a *pro se* inmate's complaint is deemed filed the date it is delivered to prison officials for mailing. *Houston v. Lack,* 487 U.S. 266, 271-272 (1988); *Adams v. United States,* 173 F.3d 1339, 1340-41 (11th Cir. 1999); *Garvey v. Vaughn,* 993 F.2d 776, 780 (11th Cir. 1993). "Absent evidence to the contrary in the form of prison logs or other records, [this court] must assume that [the instant complaint] was delivered to prison authorities the day [Lee] signed it...." *Washington v. United States,* 243 F.3d 1299, 1301 (11th Cir. 2001). In light of the foregoing, the court considers September 26, 2005 as the date of filing.

based on arbitrary and vindictive reasons. (*Doc. No. 1, 11, 19*.) Named as defendants are former Commissioner Donal Campell and William Segrest, Executive Director for the Alabama Board of Pardons and Paroles. For relief, Lee requests that erroneous information be expunged from his prison and parole files including any and all information concerning sexual activity between him and the victim, death threats he made against state officials, and his commission of a murder in Illinios. Lee also requests that he be declared governor and that he be considered for parole under the rules and regulations in effect at the time of his convictions. (*Doc. Nos. 1, 19*.)

Defendants filed special reports, supplemental special reports, and supporting evidentiary materials addressing Lee's claims for relief. In accordance with the orders entered herein, the court deems it appropriate to treat these special reports, as supplemented, as motions for summary judgment. This case is now pending on Defendants' motions for summary judgment. Upon consideration of such motions, the evidentiary materials filed in support thereof, and the responses filed by Lee, the court concludes that Defendants' motions for summary judgment are due to be granted.

## I. FACTS

In 1972 the Circuit Court for Mobile County, Alabama, entered convictions against Lee, pursuant to his pleas of guilty, on two counts of murder and sentenced him to life in prison. In 1983, after he escaped from prison, the Circuit Court for Hale County, Alabama, entered a conviction against Lee for escape in the first degree and sentenced him to 99 years

imprisonment to run consecutively to his life sentence. Lee has been considered for parole on several occasions during his incarceration but has been denied parole after each parole consideration hearing. The most recent decision to deny Lee parole occurred on May 12, 2003. (*See Doc. No. 17, Exhibits at pgs. 4, 12, 44.*)

## II. DISCUSSION

*A. Standard of Review*

To survive the properly supported motion for summary judgment filed by Defendants, Lee is required to produce some evidence which would be admissible at trial supporting his constitutional claims. Rule 56(e), *Federal Rules of Civil Procedure*. Specifically, he must "go beyond the pleadings and ... designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). To meet this standard, "[a] mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party. *Anderson v. Liberty Lobby,* 477 U.S. 242, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986)." *Walker v. Darby*, 911 F.2d 1573, 1576 -1577 (11th Cir. 1990). A plaintiff's conclusory allegations do not provide sufficient evidence to oppose a motion for summary judgment. *Harris v. Ostrout*, 65 F.3d 912 (11th Cir. 1995); *Fullman v. Graddick*, 739 F.2d 553, 556-557 (11th Cir. 1984). Thus, when a plaintiff fails to make a showing adequate to establish the existence of an element essential to his case, and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party.

*Celotex*, 477 U.S. at 322; *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607 (11th Cir. 1987).

Where all the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates that there is no genuine issue of material fact and that the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper. *Celotex Corp.*, 477 U.S. at 322; *Everett v. Napper*, 833 F.2d 1507, 1510 (11th Cir. 1987); *Wright v. Southland Corp.,* 187 F.3d 1287 (11th Cir. 1999); *Pritchard v. Southern Co. Servs.,* 92 F.3d 1130, 1135 (11th Cir. 1996); *McMillian v. Johnson,* 88 F.3d 1573, 1584-1585 (11th Cir. 1996). Summary judgment is, therefore, appropriate when the pleadings, admissible evidentiary materials and affidavits "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c) *Federal Rules of Civil Procedure*; *Eberhardt v. Waters*, 901 F.2d 1578, 1580 (11th Cir.1990).

Although factual inferences must be viewed in a light most favorable to the non-moving party, and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing a genuine issue of material fact. *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). In this case, Lee has failed to demonstrate that there is a genuine issue of material fact in order to preclude summary judgment.

*B. The False Information Claim*

In his complaint, Lee challenges an adverse parole action or decision which occurred on May 12, 2003.[2] Specifically, Lee argues that false information exists in his prison and parole files, that this false information has been used to deny him parole and less restrictive custody/security status within the Alabama Department of Corrections, and that Defendants have the authority to remove the erroneous information from his prison and parole files. Lee further argues that the erroneous information in his parole and inmate files should not be considered during parole consideration hearings or for possible changes to his custody and security levels. Lee asserts that the false information in his files consists of information that he raped one of his victims, that he committed murder in another state, and that he made death threats against various state officials.[3]   (*Doc. Nos. 1, 11, 19*.)

---

[2]Defendant Segrest maintains in his brief that Lee's challenges to his May 12, 2003 bid for parole is barred by the statute of limitations. (*Doc. No. 15*.)  Lee, argues, however, that the court should equitably toll his claims for the time during which he challenged the parole board's decision in a petition for writ of certiorari filed in the Circuit Court for Montgomery County, Alabama.  Lee states that those proceedings did not become final until May 13, 2005 and, therefore, his complaint filed on September 28, 2005 is timely filed. The undersigned agrees. *See Booth v. Churner*, 532 U.S. 731 (2001); *Porter v. Nussle*, 534 U.S. 516 (2002).  Therefore, the court finds that Lee's state court proceedings in which he challenged the parole board's May 12, 2003 decision to deny him parole tolled the statute of limitations applicable to this § 1983 action. *See, e.g.*, *Leal v. Georgia Dep't. of Corrections*, 254 F.3d 1276, 1280 (11th Cir. 2001) (citing other circuit decisions).

[3]In the pre-sentence investigation report, the officer who prepared the report indicated that it was not known if Lee had sexual relations with the female victim due to the fact that she had recently had intercourse with her boyfriend.  The pre-trial officer further indicated in his/her PSI report that s/he was told by an assistant district attorney that there was "some sexual activity involved on Lee's part, in all probability, after the Burnett girl was dead."  Lee contends that this statement is false because he has never been convicted nor charged with rape of one of the victims, "alive or dead." (*Doc. No. 1 at 5 and Exh. 1*.)  That Lee was not charged with rape does not, *ipso facto*, make the statement about which he complains a false one.

5

Defendant Segrest states that he is not a member of the Board of Pardons and Paroles and has no decision-making authority in deciding which prisoners are granted or denied parole. Further, Defendant Segrest does not admit that the information utilized in Lee's parole decision-making process was false and further states that he is not aware of any false information in Lee's parole file. (*Doc. No. 17, Exhibits at pgs. 14, 15; Doc. No. 29, Segrest Affidavit*.) Similarly, Lee fails to proffer evidence that former Commissioner Campbell was aware of any false information in Lee's inmate file and there is no dispute that this defendant had no authority over the parole board or any information or presentation of evidence used in Lee's parole hearings. The present Commissioner for the Alabama Department of Corrections likewise affirms that he is not aware of any false or erroneous information contained in Lee's inmate file. (*See Doc. No. 8, Exh. A; Doc. No. 30, Exh. B*.)

In *Monroe v. Thigpen*, 932 F.2d 1437 (11th Cir. 1991), the court considered a *pro se* inmate's complaint alleging that he was deprived of due process because erroneous information in his prison file was used to deny him fair consideration for parole and minimum custody status. Monroe alleged that presentence report information indicating he had raped the victim of his crime was false. The defendants admitted the presentence information was false. Acknowledging that he had no liberty interest in parole, Monroe claimed a due process right to be fairly considered for parole. He contended that the defendants' reliance on admittedly false information in order to deny him parole or minimum security classification violated due process. The *Monroe* court held that the defendants'

6

reliance on admittedly false information to deny Monroe consideration for parole was arbitrary and capricious treatment violative of the constitution. However, the *Monroe* court was careful to distinguish its holding from its prior decision in *Slocum v. Ga. State Bd. of Pardons & Paroles*, 678 F.2d 940 (11th Cir.1982).

> Our holding today does not conflict with our earlier holding in *Slocum*, *supra*. In *Slocum*, the plaintiff, who had been denied parole, made the conclusory allegation that the Board must have relied upon erroneous information because otherwise the Board would surely have granted him parole. *Slocum*, 678 F.2d at 941. The plaintiff then sought to assert a due process right to examine his prison file for the alleged errors. Unlike the instant case, in *Slocum* the state did not admit that it had relied upon false information in denying parole nor did the plaintiff present any evidence that his prison file even contained any false information. We held in *Slocum* that prisoners do not state a due process claim by merely asserting that erroneous information may have been used during their parole consideration. *Id*. at 942. We also determined that prisoners do not have a due process right to examine their prison files as part of a general fishing expedition in search of false information that could possibly exist in their files. *Id*. In the case at bar, we are confronted with prison authorities who admit that information contained in Monroe's files is false and that they relied upon such information, at least in part, to deny Monroe parole and to classify him as a sex offender. As we stated, the parole statute does not authorize state officials to rely on knowingly false information in their determinations. *Thomas [v. Sellers]*, 691 F.2d [487] at 489 [ (11th Cir. 1982)].

*Monroe*, 932 F.2d at 1442.

The instant case is controlled by *Slocum v. Georgia State Bd. of Pardons and Paroles*, 678 F.2d 940 (11th Cir. 1982). The *Slocum* court held that prisoners do not state a due process claim by merely asserting that erroneous information exists in their prison files. Moreover, "prisoners cannot make a conclusory allegation regarding the use of [false] information as the basis of a due process claim." *Jones v. Ray*, 279 F.3d 944, 946 (11th Cir.

2001). In this case, Defendants do not admit that information in Lee's inmate or parole files is false. Lee's mere contention that there is false information in his parole and inmate files which is being used to deny him parole and/or access to less restrictive assignments within the Alabama Department of Corrections, without evidence of its falsity, is insufficient.[4] Defendants are, therefore, entitled to summary judgment on this claim.[5]

*C. The Ex Post Facto Claim*

Lee argues that he is entitled to have his requests for parole considered under the statutes and regulations which were in effect at the time of his 1972 convictions. Specifically, Lee maintains that at the time of his convictions he was entitled to: 1) be present before the parole board; 2) be heard by the parole board; 3) question evidence against him before the parole board; 4) present evidence on his behalf; and 5) be free from all

---

[4] Summary judgment is not precluded merely because the inmate disputes the validity of the information. In *Hewitt v. Helms*, 459 U.S. 460 (1983), the Court stated that "prison officials have broad administrative and discretionary authority over the institutions they manage and . . . lawfully incarcerated persons retain only a narrow range of protected liberty interest . . . broad discretionary authority is necessary because the administration of a prison is "at best an extraordinarily difficult undertaking," . . . and . . . to hold . . . that any substantial deprivation imposed by prison authorities triggers the procedural protections of the Due Process Clause would subject to judicial review a wide spectrum of discretionary actions that traditionally have been the business of prison administrators rather than of the federal courts." *Id*. at 467.

[5] The court notes that Lee submits the affidavit of an individual, Ms. Paulette Butt, who was present at his May 12, 2003 parole hearing. (*Doc. No. 1 at Exh. H*.) The contents of this affidavit concern Ms. Butt's recitations of what she contends various persons said during the hearing. Ms. Butt's affidavit also states that she and her husband had met with an individual at the parole office in Montgomery, Alabama, in September 2002 and that she "was alarmed" at learning that one of the victims of Lee's crimes had been raped. Presumably after this meeting Ms. Butt had an opportunity to speak with Lee and she states in her affidavit that she "was convinced that the Parole File was in error." (*Id*.) To the extent Lee submits Ms. Butt's affidavit as support for his claim that false information is contained in his parole and/or prison files, the court finds that the affidavit of Ms. Butt consists of no more than the testimony she asserts was presented at the parole hearing as well as her personal belief that Lee's parole file contains inaccurate information. In short, the affidavit does not amount to evidence that false information actually exists in Lee's prison or parole file.

8

protests. Subsequently, amendments were made to Ala. Code § 15-22-36 and Ala. Code § 15-23-79. The amendments, Lee complains, "created sufficient risk that his time in prison will [be] increased because he is unable to present evidence in his behalf, point out erroneous information, stop unnecessary protests from people who know not the victims nor Plaintiff, [and] to protect himself from false witnesses before the Parol Board." (*Doc. No. 1 at 7.*)

The *Ex Post Facto* Clause directs that the government may not apply a law retroactively that "inflicts a greater punishment, than the law annexed to the crime, when committed." *Calder v. Bull*, 3 U.S. (3 Dall.) 386, 390, 1 L.Ed. 648 (1798). Upon review of Ala. Code § 15-23-79, which concerns the Crime Victims' Rights Act, the relevant provision provides that "[t]he victim . . . may submit a written statement, or recorded oral transcription, which shall be entered into the prisoner's [correctional] records. The statement shall be considered during any [classification] review for community status of the prisoner or prior to release of the prisoner. . . . The victim shall have the right to be notified by the Board of Pardons and Paroles and allowed to be present and heard at a hearing when parole or pardon is considered . . ." *Ala. Code* § 15-23-79(a)-(b). Since initial enactment of the Alabama Code in 1940, the Alabama Board of Pardons and Paroles has been required to notify crime victims of any action to be undertaken by the board. *Ala. Code* § 15-22-36(e)(1) (1975, as amended), formerly codified at *Ala. Code* § 15-22-36(e)(1)(i) (1940). Additionally, a victim has always been afforded the right, "at their option, to either appear before the board or give

their views in writing."[6] *Ala. Code* § 15-22-36(e)(2)i. (1975, as amended), formerly codified at *Ala. Code* § 15-22-36(e)(2)i (1940). The terms of the Crime Victims' Rights Act do not inflict greater punishment nor do they create any risk of increased punishment to Lee. Moreover, the terms of such Act relative to parole merely address rights of victims previously and continuously provided under the provisions of *Ala. Code* § 15-22-36(e)(1).[7]

Lee contends in his opposition to Defendants' dispositive motions that Ala. Code § 15-22-36(e) did not exist at the time of his conviction "[y]et, on May 12, 2003, the victim's brother along with several other[s] were presented at the hearing and did give testimonies before the Board." (*See Doc. No. 19 at 9.*) The Alabama Court of Criminal Appeals addressed Lee's general argument that the Parole Board should not have notified the brother

---

[6] As noted, Lee was convicted on two counts of murder. Thus, the victims of his crimes are deceased. Ala. Code § 15-22-36(e)(3) provides that if the victim(s) is deceased, the notice contemplated in § 15-22-36(e)(1) shall be given to the victim's immediate family.

[7] In affirming the state court's denial of Lee's petition for writ of certiorari challenging the Parole Board's May 2003 decision to deny his request for parole, the Alabama Court of Criminal Appeals concluded that Ala. Code § 15-22-36(e)(1) was not applicable to Lee's parole hearing. Specifically, the appellate court determined:

> At the time of Lee's parole hearing in 2003, § 15-22-36(e)(1) . . ., provided, in part that '[t]he Board of Pardons and Paroles shall have no power or authority to in any way approve or order any parole [. . .] of a person who has been convicted of . . [certain enumerated felonies, including murder] . . . until and unless at least 30 days written notice of the board action to be considered has been given by the board to the victim.' This subsection limits the power of the Board to grant parole without notice to the victim. By its very language, however, § 15-22-36(e)(1) applies only when the Board grants parole; it does not apply when the Board denies parole. Because the Board denied Lee's parole, it is clear that § 15-22-36(e)(1) was not applied to Lee's parole hearing.

(*Doc. No. 17, Exh. D at 6.*)

of one of the victim's of the parol hearing or allowed him to testify at the hearing. That court concluded:

> . . . Lee has cited no authority and our research has uncovered nothing in the statutes as they read at the time of Lee's sentencing that precluded, prohibited, or otherwise prevented the Board from notifying the victim's family of the parole hearing or hearing testimony from family members at the hearing. Rather, the Board had the authority under the statutes in effect at the time of Lee's sentencing to solicit and consider all of the evidence bearing on its consideration of parole.

(*Doc. No. 17, Exh. D at 7*.)

Based on the foregoing as well as the document, pleadings, and records before the court, the undersigned concludes that Lee has failed to establish that Defendants violated any constitutional right to which he is entitled and specifically finds that no *ex post facto* violation occurred with respect to the matters about which Lee complains. Summary judgment is, therefore, due to be granted in favor of Defendants on this claim.

*D. The Denial of Parole*

Lee complains that the Parole Board is vindictive and that it's denial of his request for parole was arbitrary "[e]specially . . . when there are other[] inmates in like cases [who] are treated different and enjoying the privilege of parole." The Parole Board has no reason to continue to deny him parole since, Lee claims, he has served over 38 years in prison, he is no longer a threat to society, and especially because there are "incorrect details" in his PSI report. (*Doc. No. 1 at 8; see also, Doc. No. 31*.)

"The Alabama [parole] statute ... calls for discretionary rather than mandatory action

11

on the part of the board. The law directs the board to consider a number of factors in making their determination, which is a subjective rather than objective determination. It does not contain any language that mandates parole . . . When the statute is framed in discretionary terms there is not a liberty interest created." *Thomas v. Sellers*, 691 F.2d 487, 489 (11th Cir. 1982).

This court's review of the history of the Alabama parole statute establishes that from its inception the statute has been framed in discretionary terms. The law is well settled that "[t]he mere possibility of parole provides simply 'a hope that is not protected by due process . . .' *Greenholtz [v. Inmates of the Nebraska Penal and Correctional Complex]*, 442 U.S. [1], at 11[-12 (1979) ].... [Moreover], the Alabama parole statute frames the Parole Board's authority in discretionary terms, and thus does not create for Alabama prisoners a protected liberty interest in the expectation of parole. *See Thomas v. Sellers*, 691 F.2d 487 (11th Cir. 1983)." *Ellard v. Alabama Bd. of Pardons and Paroles*, 824 F.2d 937, 942 (11th Cir. 1987).

Federal courts no longer ascertain whether a state created a constitutionally protected liberty interest by parsing language of statutes and regulations to determine if the language was "of an unmistakably mandatory character" placing "substantive limitations on official discretion" but must instead look to the nature of the deprivation to determine if a state created a liberty interest. *Sandin v. Conner*, 515 U.S. 472, 483-484 (1995). Although "States may under certain circumstances create liberty interests which are protected by the Due Process Clause[,] ... these interests will be generally limited to freedom from restraint which,

12

while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, ... nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id*. "Since an inmate is normally incarcerated in prison, [Lee's remaining in prison while awaiting parole consideration] d[oes] not impose atypical and significant hardship on him in relation to the ordinary incidents of prison life and, therefore, d[oes] not deprive him of a protected liberty interest." *Asquith v. Dep't of Corr.*, 186 F.3d 407, 412 (3rd Cir. 1999).

Nevertheless, even though there is no liberty interest involved, a parole board may not engage in "flagrant or unauthorized action." *Thomas*, 691 F.2d at 489. It is undisputed that Defendant Segrest is without authority to review parole applications and that he does not know the reasons for the Board's denial of Lee's parole application. (*Doc. No. 17, Ehxs. At 14-15; Doc. No. 29, Segrest Affidavit.*)  In addition, Lee has failed to present any evidence indicating that either Defendants Segrest or Campbell were in any way involved in the Parole Board's decision-making process to deny him parole. Lee also fails to present any evidence tending to show that Defendants Segrest or Campbell engaged in any arbitrary or capricious action with respect to the denial of Lee's parole application. *Cf. Conlogue v. Shinbaum*, 949 F.2d 378 (11th Cir. 1991); *Thornton v. Hunt*, 852 F.2d 526, 527 (11th Cir. 1988) (holding that the denial of eligibility for incentive time benefits to inmate who received sentences of more than 15 years "is rationally related to the legitimate purpose of preventing the early release of serious offenders [and] does not violate the equal protection clause or due process

13

clause"). Consequently, Defendants' motions for summary judgment with respect to each of Lee's due process claims is due to be granted.

*E. The Equal Protection Claim*

To the extent Lee's complaint asserts a claim that his Fourteenth Amendment right to equal protection was violated because he has been denied parole when "other[] inmates in like cases are treated different and enjoying the privilege of parole," he is entitled to no relief. (*Doc. No. 1 at 8*.)   In order to establish a claim cognizable under the Equal Protection Clause, Lee must demonstrate that he is similarly situated with other prisoners who received more favorable treatment and that he was treated different based on some constitutionally protected interest. *Damiano v. Fla. Parole & Prob. Comm'n*, 785 F.2d 929, 932-33 (11th Cir.1 986); *Jones v. Ray*, 279 F.3d 944, 946-947 (11th Cir. 2001). Moreover, to succeed on an equal protection challenge, a plaintiff must also demonstrate the existence of discriminatory intent; arbitrary application of prison rules without discriminatory intent is insufficient to demonstrate a violation of the Equal Protection Clause. *Jones v. White*, 992 F.2d 1548, 1573 (11th Cir. 1993); *E & T Realty v. Strickland*, 830 F.2d 1107 (11th Cir. 1987).

> [O]fficial action will not be held unconstitutional solely because it results in a . . . disproportionate impact. . . Proof of . . . discriminatory intent or purpose is required to show a violation of the Equal Protection Clause. Discriminatory purpose . . . implies more than intent as volition or intent as awareness of consequences. It implies that the decision maker . . . selected . . . a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group.

*Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979) (footnote and citation omitted);

*see also Hernandez v. New York*, 500 U.S. 352, 359 (1991). In a case such as this one, where the plaintiff challenges actions of parole and prison officials, exceptionally clear proof of discrimination is required. *Fuller v. Ga. Bd. of Pardons and Paroles*, 851 F.2d 1307, 1310 (11th Cir. 1988). Evidence which merely indicates disparity of treatment is insufficient to show discriminatory intent. *McCleskey v. Kemp*, 481 U.S. 279 (1987).

Since this case is before the court on Defendants' properly supported motion for summary judgment, Lee bears the burden of producing some evidence to show that their actions were the result of intentional discrimination. *Celotex*, 477 U.S. at 322-324; *Waddell*, 276 F.3d at 1279. Inmates themselves do not constitute a suspect or quasi-suspect class entitling such persons to "strict scrutiny" of disparate government treatment. Here, what Lee actually complains of is his disappointment in not being granted parole despite his perception that he should be because other inmates who have committed murder have been paroled. Thus, Lee regards this conduct as actionable unequal treatment. Nevertheless, Lee does not allege that he has been subjected to any tangible unequal treatment by Defendants' conduct such as their decision being based upon a constitutionally protected interest. As a matter of law, therefore, the allegations supporting this claim, without more, do not rise to the level of a constitutional violation and summary judgment is, therefore, due to be granted in favor of Defendants on this claim.

### III.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1. Defendants' motions for summary judgment (*Doc. Nos. 8, 17*), be GRANTED;

2. Judgment be ENTERED in favor of Defendants and against Plaintiff,

3. This case be DISMISSED with prejudice; and

4. The costs of this proceeding be taxed against Plaintiff for which execution may issue.

It is further

ORDERED that the parties are DIRECTED to file any objections to the said Recommendation on of before **October 23, 2007**. Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which a party objects. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982). *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982). *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (*en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on

September 30, 1981.

    Done, this 10th day of October 2007.

                                 /s/ Wallace Capel, Jr.
                                 WALLACE CAPEL, JR.
                                 UNITED STATES MAGISTRATE JUDGE